## ADOPTION OF A MINOR.

Essex. April 8, 1982. — July 19, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Administrative Law,* Exhaustion of remedies. *Adoption,* Care and protection, Foster parents. *Practice, Civil,* Adoption. *Due Process of Law,* Adoption, Foster parents.

Where a child's parent was actively opposing a care and protection proceeding brought by the Department of Social Services in the juvenile session of a District Court, neither the Department nor the child's foster parents claiming through the Department had "care or custody" of the child requisite for the foster parents to bring a petition for adoption in the Probate Court under G. L. c. 210, § 3. [743-749]

Any constitutional right to a hearing on the issue of adoption a child's foster parents may have had was not violated by dismissal of their adoption petition where the child's lawful parent was actively opposing a care and protection proceeding and where the foster parents were permitted to participate to some extent in the proceeding. [749-751]

PETITION filed in the Essex Division of the Probate and Family Court Department on March 24, 1981.

A motion to dismiss was heard by *Buczko,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*David M. Lipton (Matthew H. Feinberg* with him) for the foster parents.

*Judith S. Yogman,* Assistant Attorney General, for Department of Social Services.

HENNESSEY, C.J. The issue before us is whether a Probate Court judge may entertain this adoption petition filed by a child's foster parents. We conclude that the statutes governing adoption do not permit foster parents to petition for adoption while the child's mother is opposing a care and protection proceeding brought by the Department of Social Services (Department)[1] in the juvenile session of a District

_____

[1] For convenience, we shall use the term "Department" to refer to both the Department of Social Services and its predecessor, the Department of Public Welfare.

Court. We also conclude that in the circumstances the foster parents have no constitutional right to adjudication of the merits of their adoption petition.

In January, 1979, a nineteen month old child was admitted to a hospital for treatment of serious burns. In February, 1979, a Department social worker filed a petition for care and protection of the child in the juvenile session of a District Court under G. L. c. 119, §§ 24-27. These sections established a procedure by which the Department may obtain custody of a child suffering from, or in danger of, abuse or neglect. Under § 24, the court may order immediate removal of the child to the Department's care. A hearing follows under §§ 25 and 26 to determine whether the child is "in need of care and protection." G. L. c. 119, § 26, as amended through St. 1978, c. 552, § 29. If the court so determines, it may, depending on the best interests of the child, commit the child to the custody of the Department or make other arrangements for the child's care. Under § 27, the child, her parents or guardian, the Department, or anyone appearing on the child's behalf may appeal the court's order for a de novo trial in the juvenile appeals session of a District Court.

In the present case, the judge in the District Court awarded temporary custody to the Department on February 21, 1979. The Department placed the child with foster parents, the petitioners in this case, on March 10. In April, 1980, a full hearing was held in the care and protection proceeding, and the District Court judge awarded permanent custody to the Department. The child's mother appealed to the juvenile appeals session, and her appeal is still pending. The child, meanwhile, has remained with the foster parents.

On March 24, 1981, the foster parents filed petitions in the Probate Court for temporary and permanent guardianship with custody, and for adoption. On the same day, the Probate Court judge granted temporary guardianship. The Department and the child's mother later entered the proceedings. The Department moved to vacate the temporary guardianship order and to dismiss the adoption petition. A

guardian ad litem was appointed for the child, and opposed the Department's motions. After a hearing, the probate judge allowed the Department's motions. The foster parents appealed the judgment dismissing their adoption petition,[2] and we granted their application for direct appellate review.

The probate judge did not identify the grounds for his decision to dismiss the foster parents' adoption petition. The Department's motion to dismiss, however, was based on contentions that the foster parents had no "standing" to petition for adoption, and that the Probate Court could not determine issues of custody and adoption while a care and protection proceeding was pending in the District Court. Therefore, we treat the probate judge's order dismissing the foster parents' petition as based on these preliminary questions only, and not as an adjudication of the ultimate issues of the welfare, needs, and interests of the child.

1. *"Standing" under the adoption statutes.* The statutes governing adoption establish a number of preliminary conditions to adoption in addition to the requirement that adoption must serve the welfare of the child. G. L. c. 210, §§ 1-6. See *Krakow* v. *Department of Pub. Welfare,* 326 Mass. 452, 455-456 (1950). The parties disagree as to whether the foster parents' petition meets these conditions, characterizing the issue as one of "standing." Although the statutory conditions are variously phrased in terms of who may sue and what conditions are necessary to the entry of a decree, we accept the parties' characterization for purposes of convenience.

We begin with a summary of the adoption statutes. Basic conditions for adoption are set forth in G. L. c. 210, § 1, which provides that any person of full age may petition the Probate Court to adopt a person younger than himself unless the two are related in certain enumerated degrees. Subsequent sections, however, establish additional limitations, the application of which depends on the circumstances surrounding the petition.

---

[2] The question of guardianship is not before us.

Section 2A lists five "conditions" upon which adoption may be based. One of the five must be met before a Probate Court judge can enter a decree. The five conditions are (1) placement for adoption by the Department or a licensed agency; (2) a blood relationship between the child and the petitioner; (3) a relationship of stepchild and stepparent between the child and the petitioner; (4) nomination of the petitioner in a will, or (5) the Department's approval of the petition. Thus the effect of § 2A is that, outside the limited group of family members and testamentary nominees, adoption must be arranged by the Department or meet with its approval.[3] This rule is subject to one qualification. A petitioner aggrieved by the Department's failure to approve may "appeal" the Department's decision to the Probate Court hearing the petition. G. L. c. 210, § 2A (E).

When the child's parents have not consented to adoption, additional conditions must be met. General Laws c. 210, § 2, states a general requirement of written consent by the child's lawful parents. This provision is qualified by two exceptions contained in G. L. c. 210, § 3. First the judge may allow a petition brought by a person having "care or custody" of the child, despite the lack of parental consent, if the court finds that the adoption is in the child's best interests. Alternatively, the Department may initiate an independent proceeding to dispense in advance with the need for parental consent to adoption of a child in the Department's "care or custody." In either case, two requirements are imposed. The petitioner, or the Department, as the case may be, must have the "care or custody" of the child, and the court must find that the adoption without parental consent is in the child's best interests. See *Petition of the*

---

[3] The Department's central role in all adoptions is reinforced by G. L. c. 210, § 5A, which requires notice to the Department, followed by an inquiry and a written report by the Department. See *Adoption of a Minor (No. 2)*, 367 Mass. 684, 687 (1975). In addition, G. L. c. 28A, §§ 11, 15, and 16, impose criminal penalties for placement of a child, for purposes of adoption, with anyone outside the child's family, unless placement occurs through the Department or a licensed agency.

*Dep't of Pub. Welfare to Dispense with Consent to Adoption,*
383 Mass. 573, 581-585, 587-592 (1981); *Petition of the
New England Home for Little Wanderers to Dispense with
Consent to Adoption,* 367 Mass. 631, 642-646 (1975).

The Department contends that the foster parents' petition
must fail because it lacks both the Department's approval as
required by § 2A,[4] and consent of the child's parents, as re-
quired by § 2. We agree with the petitioners that lack of
approval by the Department does not warrant dismissal of
the petition. As noted above, the petitioners were entitled
to appeal the Department's decision to the Probate Court.
G. L. c. 210, § 2A (E). Such an appeal is incorporated in
the adoption petition, and permits the judge to override the
Department's decision as a part of his determination of the
merits of the petition. See *Adoption of a Minor,* 362 Mass.
842, 845 (1973); *Adoption of a Minor,* 338 Mass. 635, 639
(1959). The Department argues that the foster parents can-
not invoke this appeal procedure because they have not for-
mally sought and been denied the Department's approval.
This argument invokes the principle that when an available
administrative proceeding can contribute to sound disposi-
tion of a case, courts should defer to the agency's "primary
jurisdiction." See, e.g., *Murphy* v. *Administrator of the
Div. of Personnel Administration,* 377 Mass. 217, 220-222
(1979). Here, there is no reason for deferral. The Depart-
ment is a party to the adoption proceeding. Its participa-
tion, and the report it must submit under G. L. c. 210,
§ 5A,[5] ensure that the judge has the full benefit of its views
and expertise. *Id.* at 222.

We agree, however, with the Department's second con-
tention, that the foster parents' petition does not qualify for

---

[4] There is no question that the petitioners fail to satisfy any of the first
four conditions of § 2A. They are not related to the child by blood or
marriage, or nominees under a will, and they received the child, not "for
adoption," but for temporary foster care.

[5] Section 5A provides that the Department must be notified of any
adoption petition. The Department must then conduct an inquiry, and
prepare and submit a report.

an exception to the requirement of parental consent. As we have explained, a determination under G. L. c. 210, § 3, that adoption without parental consent is in the child's best interest, is available only to petitioners who have "care or custody" of the child. In a literal sense, the foster parents are now caring for the child. Nevertheless, they do not have care of the child in the sense that that term is used in § 3 (a).

We have, in the past, read the phrase "care or custody" broadly. As the foster parents point out, the two words are used disjunctively. Therefore, care alone will suffice, and no prior adjudication of custody is necessary. See *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 383 Mass. 573, 585 (1981). In *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption,* 367 Mass. 631, 642-644 (1975), we determined that a licensed child care agency had "care or custody" when the mother had voluntarily placed the child in its care, and had not made serious efforts to reclaim her child until after the agency filed its petition to dispense with consent to adoption. We emphasized, however, that the mother's previous acquiescence in the Department's care of the child provided the basis for a finding of care or custody. *Id.* See *id.* at 647-651 (Hennessey, C.J., dissenting). In *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 383 Mass. 573, 585 (1981), we acknowledged that the Department had "care" of the child, for purposes of § 3 (a), even when it was not clear that the mother had placed the child voluntarily in the Department's care.[6] Again, the mother appeared to have acquiesced in the Department's general care, although not in all of its actions, up to the time of the petition to dispense with consent to adoption. See *id.* at 576-580.

The present case differs from prior cases in that here the child's mother was vigorously opposing a separate petition

---

[6] The child was born while her mother was in prison, and soon afterward was "accepted" into the Department's care through misapplication of G. L. c. 119, § 23 (A). *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 383 Mass. 573, 574, 581-585 (1981).

for care and custody of the child when the adoption petition was filed. We believe that "care," for purposes of G. L. c. 210, § 3 (a), means care acquired either with the consent or acquiescence of the parents, or through a statutory procedure for involuntary transfer of care or custody. See G. L. c. 119, § 23 (C) (Department proceeding in Probate Court to obtain responsibility for child); G. L. c. 119, §§ 24-27 (petition for commitment of child to Department custody or other disposition in child's best interests); G. L. c. 201, §§ 2, 5 (proceedings for guardianship and custody). When a lawful parent has asserted the right to care and custody of her child in a separate proceeding not yet finally resolved,[7] care remains at issue, and cannot be deemed to rest with the Department. The foster parents, for their part, derive their rights and status with respect to the child entirely through the Department. If the Department does not have care of the child, for purposes of § 3, neither can the foster parents have care of the child.

Our interpretation brings the adoption statutes into harmony with the policies of G. L. c. 119, which governs care and protection of children, and of the Department's enabling act, G. L. c. 18B. Removal of a child from nonconsenting parents is an extreme measure, in derogation of important family interests. Under our statutes, such removal must be based on a judicial determination that the parents are currently unfit to care for the child.[8] See *Petition of the Dep't*

---

[7] In both *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 576-580 (1981), and *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 642-645 (1975), the mothers first asserted their claims to care and custody in proceedings to dispense with consent to adoption. Such a position, taken after the fact, could not defeat the petitioners' claims to care or custody at the time the petitions were filed. See *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption, supra* at 642-643.

[8] In addition, the United States Supreme Court's recent decision in *Santosky* v. *Kramer*, 455 U.S. 745 (1982), raises the possibility that unfitness must, as a matter of due process, be established by clear and convincing proof. The issue of the proper standard of proof is not now before us.

*of Pub. Welfare to Dispense with Consent to Adoption,* 383
Mass. 573, 583, 587 (1981). General Laws c. 119 provides
several procedures by which the Department may assume
responsibility for a child whose parents are unable to pro-
vide necessary care and protection. The Department may
petition the Probate Court under G. L. c. 119, § 23 (C), for
an order placing the child in its care. Alternatively, any per-
son may petition the District Court under G. L. c. 119,
§§ 24-27, for commitment of the child to the Department's
care or for any other appropriate arrangement for care or
custody (the procedure utilized here). These proceedings, as
well as the Department's actions as caretaker, must reflect
the "policy of this commonwealth to direct its efforts, first,
to the strengthening and encouragement of family life for
the protection and care of children; to assist and encourage
the use by any family of all available resources to this end;
and to provide substitute care of children only when the
family itself or the resources available to the family are
unable to provide the necessary care and protection . . . ."
G. L. c. 119, § 1, as amended through St. 1972, c. 785, § 5.
Accord, G. L. c. 18B, § 3 (A) (1).

If the bare fact of physical care were enough to support a
petition to adopt without parental consent despite the par-
ent's pending claim to care and custody, the Department
and those claiming through it could circumvent the care
and protection procedures of G. L. c. 119. Although the
ultimate issue of parental unfitness could not be avoided,
*Petition of the Dep't of Pub. Welfare to Dispense with Con-
sent to Adoption,* 383 Mass. 573, 589 (1981), the orderly
progression from parent to substitute care to adoption, and
the policy in favor of reconciliation between parent and
child, would be disrupted. Moreover, the parellel pro-
ceedings could result in conflicting orders by two courts on
custody, visits, and all matters relating to the welfare of the
child. Such a result would be intolerable, and could only
harm the interests of the child. We conclude, therefore,
that when a child's lawful parent is actively opposing a
pending petition for care and custody of the child, neither

the Department nor any other person has such "care or custody" of the child as is necessary to initiate an adoption proceeding without parental consent.[9]

Our holding should not be read to detract in any way from the Department's authority to provide protection and substitute care during the pendency of an appeal from an order committing a child to its care. Our conclusions are based on, and limited to, the language of G. L. c. 210, § 3, and the relationship between care and protection proceedings and adoption proceedings when both are opposed by the child's parents.

2. *Constitutional interest.* The foster parents assert that, apart from the adoption statutes, they are entitled as a matter of due process of law to "access to the courts to seek adoption." We have no difficulty in rejecting this claim as presented, on the ground that the foster parents have no "liberty interest" in adoption. The statutes bearing on foster care confer no right on the foster parents to adopt a child entrusted to them. Underlying the provisions for substitute care is the policy, quoted above, favoring preservation and restoration of the family whenever consistent with the child's welfare. G. L. c. 119, § 1. Through the period of foster care the Department, and in some circumstances the lawful parents, retain substantial rights and responsibilities with respect to the child. See G. L. c. 119, §§ 22, 23. Further, the Department may remove a child from foster care whenever "in its judgment the welfare of the child or its protection from neglect or abuse so require." G. L. c. 119, § 22, as appearing in St. 1972, c. 785, § 8. The only provision directly concerning adoption by foster parents states that, should the child "become eligible for adoption," foster parents should be notified, and may "request consideration" as adoptive parents. G. L. c. 119, § 23 (F), as amended through St. 1973, c. 433.

---

[9] This conclusion makes it unnecessary for us to consider the Department's further argument that, apart from the adoption statutes, the Probate Court had no power to adjudicate a petition raising the question of parental fitness while a care and protection proceeding was pending in another court.

We do not suggest that constitutional "liberty interests" are entirely dependent on the terms of State law. Nevertheless, expectations created by laws that bring a relationship into being must bear upon the liberty interests surrounding that relationship. See *Smith* v. *Organization of Foster Families for Equality & Reform,* 431 U.S. 816, 845-846 (1977); *Drummond* v. *Fulton County Dep't of Family & Children's Servs.,* 563 F.2d 1200, 1207 (5th Cir. 1977), cert. denied, 437 U.S. 910 (1978). Here, there was no basis for an expectation of eventual status as adoptive parents, and therefore, no constitutional requirement of a hearing on the question of adoption.

At the heart of the foster parents' constitutionally-based argument may be a claim to a day in court before the child is removed from their home. See *Cennami* v. *Department of Pub. Welfare,* 5 Mass. App. Ct. 403, 409-415 (1977); *Smith* v. *Organization of Foster Families for Equality & Reform, supra* at 842-847; *Kyees* v. *County Dep't of Pub. Welfare,* 600 F.2d 693, 697-699 (7th Cir. 1979); *Drummond* v. *Fulton County Dep't of Family & Children's Servs., supra* at 1206-1209. *Sherrard* v. *Owens,* 484 F. Supp. 728, 739-743 (W.D. Mich. 1980), aff'd per curiam, 644 F.2d 542 (6th Cir.), cert. denied, 454 U.S. 828 (1981); *Doe* v. *State,* 165 N.J. Super. 392, 400-406 (1979); *W.C.* v. *P.M.,* 155 N.J. Super. 555, 563-564 (1978). The unity and privacy of family are, indisputably, entitled to constitutional protection. See *Smith* v. *Organization of Foster Families for Equality & Reform, supra* at 842-843, and cases cited. The bonds of affection that evolve over time in a foster home may, despite the governing statutes and regulations, lend to the foster family many attributes of a natural family. *Id.* at 844-845. On the other hand, the rights of the natural family, as well as the interests of the child, could be harmed by procedures that enlarge and prolong a struggle for custody. See *id.* at 846-847. We need not, however, determine the full extent of the interests of foster parents, because we are convinced that they do not require adjudication of the present adoption petition. We have been advised that since this case was argued

the foster parents have been permitted to participate to some extent in the care and protection proceeding pending in the District Court. Their right to be heard can best be tested by an appeal of any limitations on their participation.

In sum, neither the Department nor the foster parents claiming through it have "care or custody" of the child in the sense that these words are used in G. L. c. 210, § 3, to describe a necessary condition of adoption without consent of the child's lawful parents. Nor are the foster parents constitutionally entitled to a hearing on the issue of adoption. Therefore, the judge correctly dismissed the foster parents' petition.

*Judgment affirmed.*