## CARE AND PROTECTION OF ZELDA.

No. 88-P-1090.

Suffolk. December 14, 1988. — February 14, 1989.

Present: PERRETTA, KAPLAN, & SMITH, JJ.

*Minor,* Care and protection. *Parent and Child,* Care and protection of minor, Foster parents. *Due Process of Law,* Foster parents.

In a proceeding for the care and protection of a minor child, the judge properly exercised discretion to deny the child's foster parents permission to intervene at an early stage in the case, where the applicants' interests in placing certain considerations before the court had not been shown to be inadequately represented by the existing parties: the child, appearing through counsel; the father, who acknowledged his paternity; and the Department of Social Services, which had temporary custody. [871-873]

In the circumstances of a proceeding for the care and protection of a minor child, the judge hearing the matter was to determine whether, and to what extent, the child's foster parents, who had been denied permission to intervene, should participate at a later stage in the proceeding. [874]

No "liberty interest" secured by either the Federal or the State Constitution afforded foster parents a due process right to intervene in a proceeding for their foster child's care and protection. [874-875]

PETITION filed in the Boston Division of the Juvenile Court Department on June 22, 1987.

Motions for leave to intervene were heard by *Roderick L. Ireland,* J.

*Matthew H. Feinberg (Matthew A. Kamholtz* with him) for the applicants.

*Ruth A. Bourquin,* Assistant Attorney General, for Department of Social Services.

*Arminda Rodriques de Limes* for the father.

KAPLAN, J. This is a proceeding commenced on June 22, 1987, in the Boston Juvenile Court for the care and protection

of Zelda,[1] born on March 20, 1987. The Department of Social Services (Department) was granted temporary custody and on September 2, 1987, it placed the child in foster care with Janet Padilla under the usual (terminable) contract with the Department. The mother, Catherine Gloster, had abandoned the child (her youngest) and is plainly an unfit parent. Tomaso Sanchez has come forward and acknowledged paternity. He has visited weekly or twice-weekly with the child (except for a period when he was out of the country) and has paid child support. He claims full custody as a parent.

The father has appeared as a party in the proceeding and is represented by counsel. The child, Zelda, is also a party and is represented by counsel. The Department, of course, completes the triad.

No evidence has been received or a finding made on the question whether the father is a fit parent.

At this stage of the case, Gloria (Padilla) Dunster and Janet Padilla have moved to intervene as parties. Gloria is the wife of David Dunster, who is the mother's uncle. The Dunsters have heretofore adopted Bella and Max, the mother's oldest children, six and seven years old. Janet Padilla is the sister of Gloria, and, as indicated, is now acting as foster parent of Zelda. She is also serving as foster parent of Hetty, another child of the mother Catherine Gloster, born on March 19, 1986, thus a year older than Zelda.[2] The Dunsters and Janet Padilla, together with the four children named, are now living in the same house. (The mother of Gloria and Janet also resides there.)

The applicants, Gloria and Janet, first moved individually to intervene. The judge denied the motion. Given a further opportunity to move, the applicants presented a motion in-

---

[1] Pseudonyms are used throughout.

[2] Hetty was also a subject of this care and protection proceeding. With respect to her the Department was granted permanent custody. (The whereabouts of Hetty's father, Carlos Castro, are unknown, and, as noted, the mother is unfit.) The Department has indicated its intention to file a petition to dispense with the consent of the parents to adoption. The plan does not identify any adoptive parent but Janet Padilla evidently hopes to be so designated. The proceeding in respect to Hetty has been "off listed."

dividually and as "next friends" of, respectively, Bella and Max, and Hetty and Zelda (however, they have not been appointed next friends under G. L. c. 201, § 34). The judge denied the motion on August 8, 1988. On both occasions he wrote findings and conclusions.

We shall affirm the denial, at this stage, of the motions to intervene and direct the judge to allow the applicants such participation in the proceeding, as it develops, as he may think advisable in the interests of just and efficient adjudication.

1. Strictly speaking, the Massachusetts Rules of Civil Procedure, and particularly rule 24, 365 Mass. 769 (1974) (intervention), have not been made applicable to proceedings in the Boston Juvenile Court. However, the findings below and the briefs on appeal deal with rule 24, and, as the expression of Commonwealth policy, that rule may well be accepted as a cogent standard.

The main question under rule 24(a) (intervention of right) (quoted in the margin)[3] would be whether the applicants can demonstrate the "interest" described in (a) (2). One tries to delineate the kind of interest that can suffice by examining the nature of the action in which intervention is claimed. In a care and protection proceeding, custody belongs to a parent such as Sanchez[4] if he is not unfit, see G. L. c. 119, § 24, and one can point here to the statutory purpose to strengthen and encourage family life, see *id.*, § 1, and *Adoption of a Minor*, 386 Mass. 741, 747 (1982); *Custody of Two Minors*, 19 Mass. App. Ct. 552, 556 (1985). A parent's unfitness must be proved

---

[3] "(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the Commonwealth confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

[4] Having acknowledged paternity, Sanchez has standing as a parent to assert the usual parental rights. See *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 114 n.1 (1984). See also *Petition of the New Bedford Child & Family Servs. to Dispense with Consent to Adoption*, 385 Mass. 482, 486 (1982).

by clear and convincing evidence. See *Custody of a Minor (No. 2)*, 392 Mass. 719, 725 (1984); see also *Santosky* v. *Kramer*, 455 U.S. 745, 769-770 (1982). It is not a basis for declaring a biological parent unfit that there is someone in the picture, whether a relative or a person currently affording foster care, who might appear for whatever reason to be a better custodian than the parent: in other words, the test of fitness is not a comparative one. See *Care & Protection of Three Minors*, 392 Mass. 704, 712 (1984).

Fitness, however, is tied to, or conditioned by, considerations of the best interests of the child. See *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 641 (1975). Thus it is conceivable, though "rare" in practice, that a parent would be rendered "unfit," and would have to yield his child, because a caretaker over a period of time had so closely "bonded" with the child that severance of the relationship would be seriously hurtful to the child. See *Care & Protection of Three Minors*, 392 Mass. at 716 n.18; *Cennami* v. *Department of Pub. Welfare*, 5 Mass. App. Ct. 403, 412-414 (1977). Similarly, it is conceivable that the value of having siblings live together, see *Freeman* v. *Chaplic*, 388 Mass. 398, 407-408 (1983), might deserve attention in deciding on a parent's "fitness.". Evidently the applicants for intervention want to enter the present proceeding in order to put considerations of this type before the court. Therein lie their "interests."

A person who is admitted as an intervenor ordinarily becomes a party with full litigative rights as such. Thus interventions, although aimed at accomplishing economies of scale, threaten to some degree, small or large, to complicate the procedure, increase expenses, and engender delays. The Department puts strong emphasis on the practical administrative objections to extending the party-structure beyond the triad. Indeed, the importance of a spare and speedy course of procedure in care and protection matters has been explained too often to require further statement here. In this connection the Department may well point to that part of (a) (2) which denies intervention of right where the applicant's interest is "adequately represented

by the existing parties" (with the applicant bearing the burden of showing the contrary, see *Attorney Gen.* v. *Brockton Agricultural Soc.*, 390 Mass. 431, 434 [1983]). The child, Zelda, appearing through counsel, and striving for her own best interests, can be expected to present to the court any contentions of merit that the applicants might offer, for the child will derive no benefit from ignoring those views and taking up a fixed adversary position. The same should hold for the attitude of the Department in the discharge of its official duties.[5] These existing parties have means of availing themselves, formally or informally, of any information or opinions the applicants may have to convey.

On the whole we think the judge was well advised to hold — at a stage in the case before proof regarding the father's fitness, in the primary sense, had been brought forward; before even a preliminary estimate could be made of the strength of the applicants' claims;[6] and before there was any showing about the ability or willingness of the existing parties to present a full case to the trier — that the applicants have not satisfied (a) (2) of the rule. It is evident that the weighing of substantive and administrative factors entering into an (a) (2) problem necessarily involves the judge in some exercise of discretion, see *Smuck* v. *Hobson*, 408 F.2d 175, 178 (D.C. Cir. 1969), and especially will this be true, we suggest, where the field is care and protection. We think there has been no abuse of discretion.[7]

---

[5] The applicants protest, in effect, that the Department is bent on having custody awarded to the father although his fitness has not been shown. This does not appear from the record. As of June 30, 1988, the Department was studying the father's home as the potential placement for his daughter, but we take this to be no more than preparation for a possible outcome of the father's claim without a departmental commitment to him while his fitness is still to be decided.

[6] On a superficial view one might suggest, with respect to "bonding," that Zelda has been with Janet for only a short period of time, and, regarding (half) sibling relationships, that these could be maintained by common efforts of all concerned even if custody ultimately falls to the father. However the facts should not be prejudged.

[7] Thus we need not consider separately the judge's denial of "permissive" intervention, rule 24(b), which accompanied his denial of intervention of right.

Although it would be unwise to interpose the applicants as parties in the proceeding at the present stage, it may become desirable later on to permit and even to encourage the applicants to participate to an extent determined by the judge. There may be little occasion for giving the applicants a separate voice if counsel for the child or the Department call the applicants as witnesses and by that or other appropriate means present any material that the trier ought to have. In other circumstances, where the applicants can make some valid contribution not otherwise elicited, the judge shall prescribe what place the applicants (or either of them) will have in the proceeding and what steps they may take. Similar procedural accommodations appear to have been made in sundry proceedings related to child welfare. See *Adoption of a Minor*, 386 Mass. at 750-751; *Care & Protection of Two Minors*, 12 Mass. App. Ct. 867 (1981); *Custody of a Minor (No. 2)*, 13 Mass. App. Ct. 290, 302-303 (1982); *Custody of a Minor (No. 3)*, 16 Mass. App. Ct. 998 (1983).

2. The applicants argue that they have a "liberty" interest under the Federal and State Constitutions which entails a right to intervene in the proceeding. Foster parents claiming to have bonded with their charges have asserted such constitutional rights to a hearing when State authorities have elected to terminate the placement. What can be gathered from the decisions is that a liberty interest will not be recognized in the foster parents when the biological parents are demanding custody for themselves; indeed (barring an exceptional case) a liberty interest will be denied even when the biological parents are out of the case. It may be suggested that, with biological parents opposing, a liberty interest would not be found in those who want to draw a child into the milieu of an extended family.[8]

---

[8] In *Smith* v. *Organization of Foster Families for Equality and Reform*, 431 U.S. 816 (1977), the Court held, assuming without deciding that foster parents had some liberty interest, that the New York procedures for changing the placement satisfied the constitutional requirement. But the Court wrote, at 853, that "whatever liberty interest may be argued to exist in the foster family is significantly weaker in the case of removals preceding return to the biological parent, and the balance of due process interests must accordingly be different." See also *Adoption of a Minor,* 386 Mass. at 750, and *Care*

But if the present applicants were able to surmount the difficulty and establish the due process right, we see no reason why the procedure we have outlined should be considered less than that which is "due." See *Attorney Gen.* v. *Brockton Agricultural Soc.*, 390 Mass. at 437 n.4.

The orders denying intervention are affirmed. On remand the judge shall allow the applicants such participation in the proceeding, as it develops, as he may think advisable in the interests of just and efficient adjudication.

*So ordered.*

---

*& Protection of Two Minors,* 12 Mass. App. Ct. 867 (1981), both referring to the *Smith* case. For cases since the *Smith* decision denying liberty interests as well where no claim could be asserted by the biological parents, see *Drummond* v. *Fulton County Dept. of Fam. & Children's Servs.,* 563 F.2d 1200 (5th Cir. 1977); *Kyees* v. *County Dept. of Pub. Welfare,* 600 F.2d 693 (7th Cir. 1979); *Sherrard* v. *Owens,* 484 F. Supp. 729 (W.D. Mich. 1980), aff'd, 644 F.2d 542 (6th Cir.), cert. denied, 454 U.S. 828 (1981). The case of *Rivera* v. *Marcus,* 696 F.2d 1016 (2d Cir. 1982), was exceptional. There a woman who had taken care of her half-siblings was held entitled to a fair procedure before the State could remove the children. The relationship had started at the mother's request (and eventuated later in a foster parent agreement with the State). It had lasted for six years. The parents were gone and no interest on their part could be asserted.