**The PEOPLE of the State of Colorado,**

**In the Interest of A.W.R., a Child,**

**Upon the Petition of the Denver Department of Human Services, Petitioner–Appellee,**

**and**

**Concerning S.L.F. and L.L.R., Respondents,**

**and**

**Concerning P.E., Intervenor–Appellant.**

**No. 99CA1188.**

Colorado Court of Appeals,
Div. II.

Sept. 14, 2000.

Certiorari Denied Jan. 22, 2001.*

---

* Justice KOURLIS would grant as to the following issue:

  Whether a foster parent intervenor in a dependency and neglect case has the right to participate fully in matters concerning the welfare of the child in such a way that includes pursuing petitions and motions, examining and cross-examining witnesses, and making legal objections and arguments.

Daniel E. Muse, City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, for Petitioner–Appellee.

Ruth A. Buechler, Guardian ad litem

Rocky Mountain Children's Law Center, Seth A. Grob, Alison Wheeler, Denver, Colorado; James McDonough, P.C., James McDonough, Englewood, Colorado, for Intervenor–Appellant.

Holme Roberts & Owen, Donald I.J. Kelso, Denver, Colorado, for Amicus Curiae Colorado State Foster Parent Association.

Opinion by Judge PLANK.

In this dependency and neglect proceeding, P.E. (foster mother/intervenor) appeals from a juvenile court order returning permanent custody of the child, A.W.R., to S.L.F. (mother) and dismissing P.E.'s motion for permanent custody. We affirm the order and dismiss the appeal of the interlocutory order.

In early 1996, the Denver Department of Human Services (department) filed a petition in dependency and neglect concerning the child, then six months old. Two months later mother gave custody of the child to the department, and a month later, the child was adjudicated dependent or neglected. Soon thereafter, the department placed the child with the foster mother.

A dispositional hearing was held on June 14, 1996, after which the juvenile court ordered that the department retain legal custody of the child and that the child remain in the same foster home. The juvenile court also approved a treatment plan which required, as pertinent here, (1) that the mother participate in individual therapy; (2) that she undergo a psychiatric evaluation; and (3) that she attend two one-hour supervised visits each week.

A review hearing in January 1997 revealed that the mother was visiting the child regularly and that she interacted well with him. However, the mother was not participating in individual therapy and requested that the requirement be deleted from the treatment plan. The juvenile court denied her request.

In August 1997, a permanency planning hearing was conducted. At that time, the mother was having unsupervised visits with the child, which occurred two times a week and ranged from two to four hours in length. The social services caseworker noted that the mother and the child were bonded.

Over the next two years, multiple hearings were held concerning the relationship of the mother and child. In general, these showed the mother and child to be bonded with progress by the mother in parenting skills. But she continued to resist participation in any mental health treatment.

During this period the child remained in the custody of the foster mother, who was permitted to intervene in the proceedings. Also, the mother was granted increasing visitation privileges.

Ultimately, in October 1998, the juvenile court, over objections of the foster mother and the guardian ad litem, adopted a recommendation of the department and ordered that temporary custody of the child be given to the mother. Acknowledging the relationship that had developed between the foster mother and the child, the juvenile court ordered that the foster mother have five overnight visits with the child each month. It further ordered the mother to participate in another parent-child interactional evaluation.

On February 2, 1999, the combined permanency planning/custody hearing began. The foster mother and guardian raised issues concerning the foster mother's interest in a continuing relationship with the child; the issues, procedure, and standard of proof under the permanency planning statute, § 19–3–702, C.R.S.2000; and the need for another psychological evaluation of the mother under C.R.C.P. 35.

First, the juvenile court rejected the foster mother's contention that she had a protected liberty interest in maintaining her relationship with the child. Next, the juvenile court determined that, under § 19–3–702, it must first decide whether the child could be returned to the mother immediately or within the next six months; only if the court found that it could not return the child could it consider the foster mother's motion for custody and the future status or placement of

the child. The court also found that § 19–3–702 required it to assess the mother's fitness, applying the preponderance of the evidence standard, and to consider the child's best interests in determining whether the child could be returned home. Lastly, the juvenile court denied the foster mother's motion for another psychological evaluation of the mother, ordered a developmental assessment of the child, and continued the hearing at the request of the foster mother.

During a status conference on April 6, 1999, the department sought to limit the role of the foster mother in the permanency planning hearing. The foster mother objected to the timeliness of the motion and argued that, having intervened as a matter of right, she was entitled to full party status. While confirming the foster mother's intervenor status, the juvenile court ruled that the foster mother's participation in the permanency planning hearing would be limited to her own direct testimony as to the child's physical, mental, and emotional conditions. It further ordered that the foster mother could not present other witnesses or evidence, examine or cross-examine any witnesses, or make any motions, objections, or legal argument.

At the permanency planning hearing conducted later that month, the evidence presented included an August 1998 updated psychological evaluation of the mother, a January 1999 parent-child interactional evaluation, and an April 1999 developmental assessment of the child.

On May 20, 1999, the juvenile court ruled that the mother was fit despite her failure to participate in individual therapy and that it was in the child's best interest to remain in the mother's custody. It then awarded permanent custody of the child to the mother and dismissed the foster mother's motion for custody.

## I.

The foster mother contends that the juvenile court erred in limiting her participation in the permanency planning hearing. We find no error.

## A.

■ First, the foster mother argues that because she had a constitutionally protected liberty interest in the continuation of her relationship with the child, she was entitled to participate fully in the hearings in accordance with her right to procedural due process. We disagree.

The Fourteenth Amendment and Colo. Const. art. II, § 25, protect individuals from arbitrary governmental restrictions on liberty interests. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Watso v. Colorado Department of Social Services,* 841 P.2d 299 (Colo.1992).

■ To establish a violation of procedural due process, a person must show that he or she has a constitutionally protected liberty interest. *Watso v. Department of Social Services, supra; People in Interest of A.M.D.,* 648 P.2d 625 (Colo.1982).

The question of the presence of a constitutionally protected liberty interest in a foster family has been addressed by other courts with mixed results.

In *Smith v. Organization of Foster Families for Equality & Reform,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), the Supreme Court addressed the issue without deciding it. There, the Supreme Court noted that the importance of a familial relationship stemmed from the emotional ties derived from the intimacy of daily association, which could arise in a foster family as well as in a biological family. However, in dictum, it indicated that if a foster family's "claimed interest derives from a knowingly assumed contractual relation with the State, it is appropriate to ascertain from state law the expectations and entitlements of the parties." *Smith v. Organization of Foster Families for Equality & Reform, supra,* 431 U.S. at 845–846, 97 S.Ct. at 2110, 53 L.Ed.2d at 36.

The *Smith* Court also warned that whatever liberty interest a foster family may have in its continuation, such interest must be substantially weakened where the state proposes to remove the child from the foster family and return it to its natural parents whose constitutionally protected liberty in-

terest derives from the blood relationship, state law sanction, and basic human rights.

Some courts have found that a foster family has a constitutionally protected interest in certain limited situations. *See Rivera v. Marcus*, 696 F.2d 1016 (2d Cir.1982) (holding that custodial relatives, who later enter into foster parent agreements with the state, have a liberty interest in preserving the family when it is unlikely the biological parent will ever petition for custody); *Brown v. San Joaquin County*, 601 F.Supp. 653 (E.D.Cal. 1985) (stating that foster family's procedural due process rights do not come into existence until natural parents abdicate their responsibility to the child); *Berhow v. Crow*, 423 So.2d 371 (1982) (holding that foster parents, selected by the mother and approved of by the father permanently to care for their infant, have a liberty interest).

More courts have found that foster parents do not have a protected liberty interest. *See Rodriguez v. McLoughlin*, 214 F.3d 328 (2nd Cir.2000 (no such liberty interest prior to finalization of adoption); *Procopio v. Johnson*, 994 F.2d 325 (7th Cir.1993) (rejecting such a liberty interest under either the Fourteenth Amendment, federal Adoption Act, or 42 U.S.C. § 1983 (1998)); *Renfro v. Cuyahoga County Department of Human Services*, 884 F.2d 943 (6th Cir.1989) (no such interest created after six year foster care relationship); *Kyees v. County Department of Public Welfare of Tippecanoe County*, 600 F.2d 693 7th Cir.1979) (foster families enjoy a more limited liberty interest than natural or adoptive families); *Drummond v. Fulton County Department of Family & Children's Services*, 563 F.2d 1200 (5th Cir.1977) (liberty interests do not evolve from state-created, temporary, foster care relationships); *Nye v. Marcus*, 198 Conn. 138, 502 A.2d 869 (1985) (no liberty interest arises from brief foster care relationships); *Johnson v., Burnett*, 182 Ill.App.3d 574, 538 N.E.2d 892, 131 Ill.Dec. 517 (1989) (under Illinois law, foster parents have no constitutionally protected liberty interest in the continued custody of their charges); *In Interests of A.C.*, 415 N.W.2d 609 (Iowa 1987) (Iowa law does not create a liberty interest in foster family relationship after any certain period of time); *In re*

*Adoption/Guardianship No. 2633*, 101 Md. App. 274, 646 A.2d 1036 (1994) (no liberty interest created because the foster relationship is a creature of the law legally inferior to biological or adoptive relationships); *Adoption of a Minor*, 386 Mass. 741, 438 N.E.2d 38 (1982) (foster parents have no liberty interest in adoption when they have no basis to expect eventual status as adoptive parents); *In re Dependency of J.H.*, 117 Wash.2d 460, 815 P.2d 1380 (1991) (Washington law does not provide foster parents with entitlement to due process regarding foster children's removal from the foster home).

■ Our review of Colorado law concerning foster parents convinces us that no expectation of a continued foster placement can arise until the goal of reunification of the child with his or her natural family has been abandoned. The primary purpose of the Children's Code is reunification of the family. Section 19–1–101, C.R.S.2000. If it is necessary to remove a child from his or her home, temporary care may be provided by a foster family while efforts are being made to rehabilitate his or her parents and to reunite the family. *See* §§ 19–1–103(51.3), 19–1–103(51.5), and 19–1–103(89), 19–1–115(4), 19–3–507(4), C.R.S.2000.

Recognizing the critical need of a child to bond with and attach to a primary adult, however, the General Assembly has imposed time limits within which reunification should be achieved. Sections 19–1–102(1.6) and 19–3–702, C.R.S.2000. Only when it becomes apparent that reunification is unrealistic does the focus shift to finding a permanent home for the child; at that time, the department may begin to consider long-term foster care or an award of guardianship to the foster parent. Sections 19–3–702(4) and 19–3–702(5)(b), C.R.S.2000; Department of Human Services Rules Nos. 7.304.22, 7.304.23, and 7.304.71, 12 Code Colo. Reg. 2509–4.

Further, after the focus shifts to finding a permanent home, the department must continue to provide reasonable efforts to preserve the biological family. Section 19–3–508(7), C.R.S.2000.

Here, although a motion to terminate was filed in August 1997 because of the mother's noncompliance with the mental health re-

quirements of the treatment plan, it was withdrawn five months later. During this five-month period, the department's goal of reuniting the mother and the child did not change, and it continued to make efforts to rehabilitate mother. Further, the mother substantially complied with the treatment plan and maintained her relationship with the child by frequently and consistently visiting him throughout the pendency of the proceeding.

On these facts, and under Colorado law, we conclude that the foster mother did not have a realistic expectation of continuation of the foster parent — foster child legal relationship. Thus, her relationship with the child did not give rise to a constitutionally protected liberty interest, and she was not entitled to the procedural protections of the due process clause of the federal or state constitution.

### B.

■ Second, the foster mother argues that, having been granted leave to intervene as a party to the action, she was entitled to full participation. We perceive no error in the way the court conducted the permanency planning hearing.

Foster parents who have had a child in their care for more than three months and have information or knowledge concerning the care and protection of the child may intervene as a matter of right in a dependency and neglect proceeding following adjudication. Section 19–3–507(5), C.R.S.2000.

Here, the issue at the permanency planning hearing was whether the child could be returned to the mother. Resolution of this issue required determinations of whether the mother's conduct or condition had improved to the extent that she could provide adequate care for the child and whether it was in the child's best interests to be returned to her custody. *See People in Interest of L.D., supra.* The mother and the child were the parties with the legal interest in this issue, not the foster mother. As discussed above, the foster mother does not have a constitutionally protected liberty interest in the continuation of her relationship with the child.

Thus, the trial court properly limited the foster mother's participation to testifying as to the child's best interest.

The foster mother's reliance on *People in Interest of C.P.,* 34 Colo.App. 54, 524 P.2d 316 (1974), is misplaced. There the court held that an intervenor in a dependency and neglect proceeding who sought custody of the children had a right to full participation in hearings concerning custody. This right, however, did not arise until after the children had been removed from the parents' custody. Here, the child had been returned to the mother and was in the mother's custody at the time of the permanency planning hearing. Thus, we conclude that *People in Interest of C.P, supra,* does not apply.

■ Finally, we reject the foster mother's assertion that the department waived its right to object to her full participation by waiting to raise it until the April 1999 status conference. The objection was based on the juvenile court's February 1999 determination concerning the issues, procedure, and standard of proof to be applied under § 19–3–702, C.R.S.2000. Thus, the objection was not untimely.

Accordingly, under the circumstances here, we find no error in the juvenile court's order restricting the foster mother's participation to direct testimony as to the child's best interests. *See* § 19–3–508(7), C.R.S.2000; *People in Interest of G.S.,* 820 P.2d 1178 (Colo.App.1991).

### II.

■ The foster mother also contends that the juvenile court erred in ruling that her motion for custody would not be considered until after a determination was made as to whether the child could be returned home. The foster mother contends that the juvenile court erred in applying a parental unfitness standard in determining whether the child could be returned to the mother under § 19–3–702, C.R.S.2000. We disagree.

Under the Uniform Dissolution of Marriage Act, § 14–10–101, et seq., C.R.S.2000 (UDMA), a custody determination pursuant to § 14–10–123, C.R.S.2000, is based on the best interests of the child, and a showing of

unfitness is not required. Section 14–10–123.4, C.R.S.2000; *In re Custody of C.C.R.S.,* 872 P.2d 1337 (Colo.App.1993), *aff'd,* 892 P.2d 246 (Colo.1995).

■ However, when a motion for custody filed in the district court pursuant to § 14–10–123 is certified to the juvenile court to be determined as part of a pending dependency and neglect proceeding, *see* § 19–1–104(4)(a), C.R.S.2000, the custody dispute must be conducted pursuant to the provisions of the Colorado Children's Code. *L.A.G. v. People,* 912 P.2d 1385 (Colo.1996); *People in Interest of D.C.,* 851 P.2d 291 (Colo.App.1993).

■ The scope of a dependency and neglect proceeding under the Colorado Children's Code, § 19–1–101, et seq., C.R.S.2000, is far broader and encompasses more complex issues than those in a custody dispute under the UDMA. *People in Interest of D.C., supra.*

A proceeding in dependency and neglect concerns children whose parents are alleged to be unable to provide reasonable care for the children. Section 19–3–102, C.R.S.2000. Among the express goals of the Children's Code are securing reasonable parental care for these children, preferably in their own home, and reuniting the family. Section 19–1–102, C.R.S.2000. Thus, the pivotal concern in maintaining children in their own home is the parents' ability to provide reasonable parental care. Section 19–1–102(c), C.R.S.2000.

If a child is removed from the home, a permanent plan that will best serve the interests of the child and the public must be established as soon as possible. Sections 19–1–102(1)(c), 19–3–507(1)(a), and 19–3–702, C.R.S.2000. *See L.A.G. v. People, supra.*

As pertinent here, § 19–3–702(3), C.R.S. 2000, provides that, at the permanency hearing, the court must determine whether there is a "substantial probability" that the child will be returned to the physical custody of the parent within six months.

Section 19–3–702(3), C.R.S.2000, provides that, if the court determines that there is not a substantial probability that the child can be returned to the parent within six months, then it must enter an order determining "the future status or placement of the child."

The language of §§ 19–3–702(3) and 19–3–702(4) is clear. *See In Matter of Catholic Charities and Community Services,* 942 P.2d 1380 (Colo.App.1997). Under the statute, the court must first determine whether the child can be returned home; if the child cannot be returned, then the court must address the future status or custody of the child. *See People in Interest of H.R.,* 883 P.2d 619 (Colo.App.1994). Accordingly, we find no error in the juvenile court's decision to defer consideration of the foster mother's motion for custody until after it had determined whether the child could be returned home. *See People in Interest of G.S., supra.*

■ However, § 19–3–702 does not prescribe what must be considered in determining whether a child can be returned home. Therefore, we must look to the purposes of the Children's Code to ascertain the appropriate considerations. *See M.S. v. People,* 812 P.2d 632 (Colo.1991).

As discussed above, the pivotal concern in maintaining a child in his or her own home is the parents' ability to provide reasonable parental care. *See* § 19–1–102, C.R.S.2000. "Reasonable parental care," which is defined at § 19–3–604(2), C.R.S.2000, the parental unfitness statute, requires, at a minimum, that the parents provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs. *People in Interest of L.D.,* 671 P.2d 940 (Colo.1983).

Thus, we conclude that the juvenile court correctly applied a parental unfitness standard in determining that the child could be returned home under § 19–3–702(3), C.R.S. 2000. Further, our review of the juvenile court order reveals that the court expressly considered the child's best interests in making its determination. And, under the Children's Code, a decision to return the child home necessarily serves the best interests of the public. *See* § 19–1–102, C.R.S.2000; *L.A.G. v. People, supra.*

### III.

■ The foster mother also contends that the juvenile court abused its discretion in denying her C.R.C.P. 35 motion for a psycho-

logical evaluation of the mother. Again, we disagree.

 C.R.C.P. 35 provides that the court may order, upon a showing of good cause, a mental examination of a party whose mental condition is in controversy. The rule does not limit a party to one examination; a second examination may be ordered if there is a substantial time between the initial examination and the trial. *Hildyard v. Western Fasteners, Inc.*, 33 Colo.App. 396, 522 P.2d 596 (1974).

 Determination of a motion filed pursuant to C.R.C.P. 35 lies within the sound discretion of the trial court. *Kane v. Kane*, 154 Colo. 440, 391 P.2d 361 (1964); *Hildyard v. Western Fasteners, Inc., supra.*

Here, on February 2, 1999, the first day of the permanency planning hearing, the foster mother sought an order requiring the mother to undergo an evaluation to determine the current status of her mental health. The juvenile court denied the motion, finding that the October 2, 1998, order requiring the mother to participate in a parent-child interactional evaluation would adequately address the impact of the mother's mental health on her relationship with the child. Also, the record reveals that the mother had undergone several psychological evaluations before the filing of the dependency and neglect proceeding and that one of the evaluations had been updated in August 1998.

Under these circumstances, we find no abuse of discretion in the juvenile court's denial of the request for yet another psychological evaluation of the mother. See *Kane v. Kane, supra; Hildyard v. Western Fasteners Inc., supra.*

### IV.

 Finally, we dismiss the foster mother's appeal insofar as it seeks reversal on the basis of alleged procedural irregularities made during the October 2, 1998, review hearing that resulted in an order changing the temporary physical custody of the child. Interlocutory orders that arise from review hearings and address the physical custody of a child but do not affect the right to legal custody are not subject to appellate review.

See *E.O. v. People*, 854 P.2d 797 (Colo.1993). See also *People in Interest of H.R., supra.*

The order of the juvenile court is affirmed. The appeal of the October 1998 interlocutory order is dismissed.

Judge TAUBMAN and Judge NIETO concur.