A former foster mother (foster mother) appeals from orders by a judge of the Juvenile Court denying her second motion to intervene in care and protection proceedings involving the child, Gemma, and her motion for access to impounded case materials. The foster mother also appeals from an order of a single justice of this court denying a stay of the termination of the biological mother's parental rights. We affirm the orders.
Background. We summarize the facts of the case, relying on the factual findings by the Juvenile Court judge and the undisputed facts appearing in the record. Gemma was born in October, 2013. The next day, a Juvenile Court judge granted emergency custody of Gemma to the Department of Children and Families (DCF).[3] DCF initially placed Gemma in the same foster home as her biological sister, but moved Gemma to the foster mother's home on November 18, 2013. After a hearing on the merits on October 30, 2014, both of Gemma's parents were found to be unfit and DCF was granted custody of the child. While the father's parental rights were terminated after the hearing, the mother's rights were not.
Some two years later, although Gemma still resided with the foster mother, the foster mother's behavior as a foster parent was becoming a source of concern.[4] On October 14, 2016, Gemma filed a motion in the Juvenile Court seeking a finding that DCF had abused its discretion in keeping her foster placement separate from a foster home where two of her biological brothers were placed. In the motion, Gemma's counsel alleged that "multiple [ G. L. c. 119, § 51A, reports] have been filed on [Gemma's] current foster home, including allegations of physical abuse on [Gemma]." The judge held a hearing on the matter at which the foster mother testified. On November 1, 2016, the judge allowed the motion, in part, and found that DCF had abused its discretion.
Aware that this finding put Gemma's placement with her in serious jeopardy, the foster mother filed her first motion to intervene in the care and protection proceedings on November 10, 2016. She argued in the motion that Gemma would suffer "measurable harm" if their relationship was "disrupted" and also claimed to fill the role of Gemma's de facto parent. The judge denied the motion without prejudice on December 20, 2016.
Gemma then filed a motion on December 30, 2016, requesting an immediate transfer from the foster mother's home. The judge allowed the motion on January 3, 2017, relying on a DCF area clinic review team's determination that "removal of the child from the present foster home and placement in a home with two of her siblings was in the child's best interest." The judge's order required DCF to begin transitioning Gemma to her brothers' foster home immediately. The foster mother attempted to stay the removal order, but her motions were denied both in the Juvenile Court and by a single justice of this court. Gemma was relocated to her new foster home on February 6, 2017.
On April 11, 2017, Gemma's biological mother stipulated to the termination of her parental rights and entered into a postadoption contact agreement with DCF. Gemma's new foster parents were listed as the adoptive parents. Once the foster mother became aware of this development, she filed another motion to intervene on April 24, 2017. This second motion to intervene, which is the subject of this appeal, asserted a failure of an opportunity to be meaningfully heard, in violation of her due process rights under the Massachusetts Declaration of Rights, and a right to a fair hearing prior to the termination of the biological mother's parental rights. The foster mother argued that a positive result at the fair hearing could cause DCF to recommend her as Gemma's adoptive parent to the judge, which was an assertion supported by an earlier statement DCF made to this court.[5] A full hearing on the second motion to intervene occurred on September 7 and 12, 2017. The judge denied the motion. In her order dated October 31, 2017, the judge concluded that the foster mother had "not presented her own 'direct, substantial, significantly protectable interest in the litigation,' " and that the foster mother's intervention "would only serve [the foster mother]'s interest and not those of the child." The foster mother filed a notice of appeal two days later.
In preparation for the appeal, the foster mother filed a motion with the Juvenile Court requesting "all transcripts and pleadings from October 1, 2016, through the present date [December 22, 2017,] in [Gemma]'s [c]are & [p]rotection case." The judge denied the motion on January 8, 2018, as "overly broad" and "request[ing] confidential, impounded information that [the foster mother] is not entitled to as a matter of law."
The foster mother also petitioned a single justice of this court for a stay of the termination of the mother's parental rights. The single justice denied the motion for a failure "to demonstrate ... a reasonable likelihood of success on appeal" on December 22, 2017. The foster mother filed a notice of appeal from the order of the single justice.
In January, 2018, the foster mother filed a motion with this court to docket, consolidate, and expedite the three issues now before us on appeal: the order denying the second motion to intervene, the order denying a request for transcripts, and the order of the single justice denying a stay of the termination of parental rights. The portion of the motion seeking to consolidate the appeals was allowed.
Discussion. 1. Motion to intervene. The foster mother appeals from the order denying her second motion to intervene in the underlying care and protection proceedings. "Whether the prospective intervener has met 'the requirements for intervention [as of right] is a question of law,' and therefore we review the ruling de novo." Beacon Residential Mgmt., LP v. R.P., 477 Mass. 749, 753 (2017), quoting Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 217 (2011). The judge, however "has discretion in determining whether an intervening party has demonstrated facts that entitled him or her to intervention as of right, and we accordingly review the judge's factual findings for clear error." Guardianship of B.V.G., 474 Mass. 315, 320 (2016), quoting Fremont Inv. & Loan, supra.
The Massachusetts Rules of Civil Procedure do not apply to proceedings in the Juvenile Court, but they serve as a "cogent standard." Care & Protection of Zelda, 26 Mass. App. Ct. 869, 871 (1989). See Adoption of Rory, 80 Mass. App. Ct. 454, 455 n.3 (2011) (rules of civil procedure apply by analogy in proceedings to dispense with consent to adoption). Under Mass. R. Civ. P. 24 (a), 365 Mass. 769 (1974), anyone "shall" be permitted to intervene if the moving party "(1) make[s] timely application; (2) claim[s] an interest relating to the property or transaction which is subject to the action; and (3) [is] so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest." Peabody Fed'n of Teachers, Local 1289, AFT, AFL-CIO v. School Comm. of Peabody, 28 Mass. App. Ct. 410, 412-413 (1990). "[T]he trial court judge enjoys a full range of reasonable discretion in evaluating whether the requirements for intervention have been satisfied." Id. at 413. Postjudgment motions to intervene, like this one, are "seldom timely" but may be allowed "in limited circumstances of strong justification." Id.
Because we conclude that the foster mother has failed to present an interest in this case sufficient to satisfy Mass. R. Civ. P. 24 (a) (2), we need not consider whether, in fact, the motion was timely. On appeal, the foster mother raises three separate bases for intervention: a right to notice and to be heard grounded in various Federal and Massachusetts statutes and regulations, a right to a preremoval hearing, and a liberty interest in the caretaking relationship with Gemma. None is sufficient.
While a foster parent generally has a right to notice and to be heard in certain Juvenile Court proceedings,[6] these rights are oriented toward assisting the judge in determining the best interests of the child. See Adoption of Sherry, 435 Mass. 331, 338 (2001) ("Because foster parents often possess the most detailed and the most current information available, the Legislature had good reason to permit them to be heard. The best interests of the child are served by ensuring that judges have all the relevant information about the child at their disposal ..."). However, the statutes and regulations upon which the foster mother relies are followed by an explicit statement that the right to notice and to be heard should not be construed to allow a foster parent to join proceedings as a party. See 42 U.S.C. § 675(5)(G) (2012) ("this subparagraph shall not be construed to require that any foster parent, preadoptive parent, or relative providing care for the child be made a party to such a proceeding solely on the basis of such notice and right to be heard"); G. L. c. 119, § 29D ("Nothing in this provision shall be construed to provide that such foster parent, pre-adoptive parent or relative shall be made a party to the proceeding"). Moreover, consistent with the spirit of Adoption of Sherry, supra, the foster mother was heard at different stages of the proceedings in the Juvenile Court.[7] Indeed, there is no evidence that the judge failed to consider the foster mother's perspective in determining Gemma's best interests. See Care & Protection of Zelda, 26 Mass. App. Ct. at 874 ("the judge shall prescribe what place the applicants [seeking to intervene] ... will have in the proceeding and what steps they may take").
Likewise, given the judge's authority to decide what is in the best interests of the child, the fact that the foster mother was heard after Gemma was removed by DCF under 110 Code Mass. Regs. § 7.116(2)(c) (2009), rather than prior to removal, cannot justify intervention. The judge, in moving toward a determination of the best interests of the child, has an interest in expediency and efficiency. See Care & Protection of Zelda, supra at 872 ("Indeed, the importance of a spare and speedy course of procedure in care and protection matters has been explained too often to require further statement here"). Regardless of the status of any administrative hearing, a Juvenile Court judge has the authority to act if the child's well-being is at stake.[8] Here, the judge found that DCF abused its discretion by not placing Gemma with her siblings and found sufficient evidence to justify an order for expedited removal. Moreover, even if a preremoval hearing had been scheduled, the result of that hearing would not constrain the judge's decision-making authority. See Adoption of Hugo, 428 Mass. 219, 226 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999) (judge has obligation to consider DCF's proposed plan but must make determination based on child's best interests). The foster mother's own interest in a preremoval hearing fails to justify intervention.
Third, and finally, the foster mother does not have a liberty interest regarding the caretaking of the child that would justify intervention in this proceeding. See Care & Protection of Zelda, 26 Mass. App. Ct. at 874-875 ("a liberty interest will not be recognized in the foster parents when the biological parents are demanding custody for themselves; indeed [barring an exceptional case] a liberty interest will be denied even when the biological parents are out of the case"). As a "claimed interest derive[d] from a knowingly assumed contractual relation with the State," the scope of any foster parent's potential liberty interest would be informed by the "expectations and entitlements of the parties." Smith v. Organization of Foster Families for Equality & Reform, 431 U.S. 816, 845-846 (1977). While we are sympathetic to the bond that may form between a child and a foster parent, Massachusetts law is clear that foster parentage is a limited status created by contract.[9] See Kerins v. Lima, 425 Mass. 108, 112 n.6 (1997) (foster parents are "temporary contract service providers with a defined set of rights and responsibilities that clearly differs from those of a child's parents"). That status does not give rise to a liberty interest. See Care & Protection of Zelda, supra. Because the foster mother has failed to state an interest sufficient to warrant intervention under Mass. R. Civ. P. 24 (a) (2), the judge's denial of the foster mother's second motion to intervene was not error.
2. Request for transcripts and pleadings. Next we turn to the Juvenile Court judge's denial of the foster mother's request for impounded transcripts and pleadings from the underlying care and protection proceeding. "The records from [a] care and protection proceeding, including the transcripts and exhibits from a trial to terminate parental rights, are impounded, pursuant to G. L. c. 119, § 38, and Juvenile Court Standing Order 1-84, Mass. Ann. Laws Court Rules, Standing Orders of the Juvenile Court, at 1107 (LexisNexis 2016)." Care & Protection of M.C., 479 Mass. 246, 247 (2018). However, records and reports of the Juvenile Court may be released with permission from the court. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 253, citing Standing Order 1-84. Here, the judge found the foster mother's motion "overly broad" and without "a basis upon which the Court would provide the material requested to a non-party." We agree. The foster mother's request for "all" documents from the start of the abuse of discretion hearing indeed was overbroad and unwarranted. Rather than tailoring her request, the foster mother chose to appeal from the order directly. Since the foster mother was a nonparty, the judge was well within her discretion to deny the foster mother such broad access absent a valid justification for doing so. See Care & Protection of Sharlene, 445 Mass. 756, 771-773 (2006). There was no abuse of discretion.
3. Single justice order. Lastly, the foster mother appeals from the single justice's order vacating a temporary stay of the termination of parental rights. Orders by a single justice are reviewed for an abuse of discretion. Petricca Constr. Co. v. Commonwealth, 37 Mass. App. Ct. 392, 394-395 (1994). To justify a stay, there must be a "reasonable likelihood of success on appeal." Commonwealth v. Allen, 378 Mass. 489, 498 (1979). The single justice's order denied the foster mother's appeal for a failure "to demonstrate ... a reasonable likelihood of success on appeal." The foster mother, as a nonparty, had no standing to appeal the termination decree at the time of the single justice's order, and as discussed above intervention was unlikely to be successful. Again, there was no abuse of discretion.
Orders entered in Juvenile Court denying second motion to intervene and motion for transcripts and pleadings affirmed.
Order of single justice denying motion to stay affirmed.

The Juvenile Court judge inaccurately stated that DCF received emergency custody of Gemma on December 30, 2013, but nothing turns on this discrepancy.

According to an affidavit submitted by Gemma's counsel, there had "been many complaints and issues internally with this foster home." As early as May 30, 2014, DCF case notes show that the foster mother would refer to Gemma by a name different from her given name. At least three DCF workers tried to correct the foster mother's behavior, including a DCF supervisor in January, 2016. During one visit, Gemma told her biological mother that her name was the one used by the foster mother, and the foster mother requested that Gemma's long term daycare placement refer to her by the other name. The foster mother continued to refer to Gemma by the other name at the time of the abuse of discretion hearing on November 1, 2016.

The statement came from a footnote in DCF's opposition to the petition requesting a stay of Gemma's removal from the foster mother's home:
"Here it is important to note that [the foster mother] has requested a fair hearing from [DCF] and that hearing has been scheduled for February 28, 2017. Her right to a hearing is not moot because, were she to prevail [DCF] would change its decision regarding the child's placement and, in turn, present [the foster mother] to the trial court as a proposed adoptive plan at the termination of parental rights trial. However, as always, the ultimate decision on any adoption petition rests with the trial court, which may reject [DCF's] proposed plan if it is found not to be in the child's best interest."

The foster mother cites to 42 U.S.C. § 675(5)(G) (2012) ; G. L. c. 119, § 29D ; 110 Code Mass. Regs. § 7.112(2)(f), (i) (2009); 110 Code Mass. Regs. § 7.116(2)(c) (2009); 110 Code Mass. Regs. § 7.200(6)(c) (2009); 110 Code Mass. Regs. § 10.06(5) (2014); and 110 Code Mass. Regs. § 10.09(3) (2014).

The foster mother testified in the abuse of discretion hearing, and her counsel was at least "briefly allowed to be heard" in the remedy hearing.

For example, 110 Code Mass. Regs. § 7.116(2)(c) (2009) lists numerous situations where a foster parent would not be entitled to a preremoval hearing, including when the area or regional director determines "that the foster child's physical, mental, or emotional well-being would be endangered by leaving the child in the foster/pre-adoptive home."

Under 110 Code Mass. Regs. § 7.111(1) (2009), each foster parent enters into a written agreement with DCF that recognizes "that foster care is a temporary arrangement which envisions the eventual reunification of the child with his/her birth family and the obligation of the foster/pre-adoptive parent to support that reunification." The foster parent must renew this agreement on an annual basis. Id. at § 7.111.