CHRISTOPHER ARSENAULT[1] *vs.* CHICOPEE HOUSING AUTHORITY. February 9, 1983. We modify a judgment of the Hampden County Housing Court in order to provide opportunity for use of the grievance procedure applicable to this dispute involving a local housing authority.

Michelle Lewis occupied under lease an apartment in the Leo P. Senecal Project of the defendant Chicopee Housing Authority (Authority). Listed on the lease as the only other member of the household was her son, the plaintiff Christopher Arsenault, an infant two years old. On February 28, 1981, Ms. Lewis told the natural father, Charles Arsenault, suing here as the child's next friend, that she wanted nothing more to do with the child who thereafter would be the father's responsibility. She left the apartment and her present residence is unknown.

The father was himself a temporary boarder in his sister's home and could not take the child to that place. In order to care for the child he moved into the mother's apartment, left his job, and applied for and received family assistance through the program of Aid to Families with Dependent Children (AFDC).

---

[1] The action is brought by his natural father, Charles Arsenault, as next friend.

Meanwhile a notice was received from the Authority setting a confer-
ence on March 13 to deal with a default in payment of rent for that month.
The father attended the conference and offered the rent in arrears to the
Authority (represented throughout by its assistant executive director). At
the same time he informed the Authority of the mother's departure and
his current occupancy. The Authority refused the rent. On the same day
the Authority presented a letter to the father stating that he was a tres-
passer in the apartment and would be criminally prosecuted if he did not
vacate it. On March 16 the father on behalf of his son tendered a written
grievance to the Authority but the Authority declined to process it. On
March 19, a second letter was received like the first indicating that the Au-
thority would take possession of the unit by force if necessary on March 23.

Accordingly, the present action was brought with the child named as
plaintiff, charging the Authority with sundry violations of rights including
the refusal to entertain the grievance, and seeking an ultimate determina-
tion that the child and father as a family could remain in the apartment on
rental terms secure from eviction. A preliminary injunction issued and the
status quo has been maintained by injunction, rent being paid monthly.

Central to the dispute is a regulation of the Department of Community
Affairs, 760 Code Mass. Regs. 4.04(5) (1980), which declares simply: "*Re-
maining Member of a Household* is eligible for continued occupancy."
The judge of the Housing Court interpreted this to be limited to a "respon-
sible" remaining member, by which he meant an "adult" capable of
entering into a lease. This derived, he thought, from another regulation,
now appearing as 760 Code Mass. Regs. 2.02 (1981), which requires that
each household occupying a public housing unit shall have a lease execut-
ed by a responsible family member. The judge intimated that 4.04(5)
might have been satisfied if the father had had lawful custody of the son,
but that any custody now secured would be "new" and unavailing. Under-
lying the judge's view was the idea that the father should not be permitted
to gain personal occupancy of the apartment through the son, thus prefer-
ring himself to outsiders who might be lined up seeking tenancies in the
project. Judgment entered permitting the Authority to proceed under
G. L. c. 239, § 1, to evict the son, and the father with him, but enjoining
the Authority from removing them until those proceedings were completed.

The contrary contention urged on the judge, and upon us, was that the
regulation should be read to encompass any persons listed as members of
the household, whether or not adults, thus enhancing continuity of resi-
dence by families. The lawful "continued occupancy" of the child em-
braces the father who is to care for him, and with whom a lease can be
entered. It is of course possible that the household, as reconstituted
through the coming in of the father, may in the end fail to qualify for the
tenancy, but that would be determined through the medium of reassess-
ment of eligibility, see 760 Code Mass. Regs. 2.03(5) (1981), as may hap-
pen when there are changes of household size or income.

We do not choose at this time between the competing interpretations or express any final opinion about the views of the judge, which on the surface appear artificial and impractical. At least in the present situation — where no reading by the agency of the critical regulation has been brought forward — we think the judge should have acted on the wrongful refusal of the Authority to process the grievance and remitted the parties to the grievance procedure which extends to matters of "status, rights, duties or welfare." 760 Code Mass. Regs. 3.02(1)(a) (1978). (Although this regulation speaks of an aggrieved "tenant" we think that term should be understood compendiously to cover an aggrieved remaining member, and indeed no contrary view has been suggested.) A somewhat analogous remission to grievance procedure appears in a case involving the National Capital Housing Authority, *Nash* v. *Washington*, 360 A.2d 510 (D.C. 1976). The grievance procedure through a "hearing panel" and possible reference to the board of the housing authority will bring to bear on this rather exceptional problem the understanding and judgment of those familiar with the workings of the project and the expectations of the residents and others; it may culminate in an opinion of the department. See 760 Code Mass. Regs. 3.02(7) (1978). Cf. *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. 746, 753 (1979). Any subsequent court proceedings would be de novo, independent of the result of the grievance procedure, see 760 Code Mass. Regs. 3.02(8) (1978), but they would benefit from the considerations developed during the grievance. Of course the matter may be settled by agreement as the grievance illuminates the issues.

The action is remanded to the Hampden County Housing Court. The conclusions of law regarding the plaintiff's right to continued occupancy will be vacated, and an appropriate judgment will be entered enjoining the defendant from commencing eviction proceedings pending resort to the grievance procedure, and, if eviction proceedings should be later commenced, from removing the plaintiff until such proceedings are concluded.

*So ordered.*

*Lenore Glaser* for the plaintiff.