NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12265


BEACON RESIDENTIAL MANAGEMENT, LP <u>vs</u>.  R.P.[1]



Suffolk.     April 6, 2017. - September 14, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.[2]


<u>Summary Process</u>.  <u>Practice, Civil</u>, Summary process,
     Intervention.



<u>S</u>ummary <u>Process</u>.  Complaint filed in the Boston Division of
the Housing Court Department on July 27, 2015.

A motion to intervene was heard by <u>Jeffrey M. Winik</u>, J.

An application for leave to prosecute an interlocutory
appeal was allowed in the Appeals Court by <u>Gregory I. Massing</u>,
J.  After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


<u>David Emer</u> (<u>Alison T. Holdway</u> also present) for the mother.
<u>Therese Quijano</u> for the plaintiff.
<u>Julia Devanthéry</u>, for Casa Myrna & another, amici curiae,
submitted a brief.
<u>Dorothy Bourassa</u> & <u>Eileen M. Fava</u>, for Women's Bar
Association, amicus curiae, submitted a brief.

---

[1] A pseudonym.

[2] Justice Hines participated in the deliberation on this
case prior to her retirement.

BUDD, J.  In this case we consider whether a mother[3] has the right to intervene in an eviction action brought by a landlord against the mother's husband and their young children as the named defendants where, although she is not a named tenant on the lease, she has lived with her family in the apartment throughout the tenancy and alleges domestic violence in the home.  We conclude that she may intervene both on her own behalf and on behalf of her children.[4]

1.  Background.  This case is before us on the mother's appeal from the denial, by a judge of the Housing Court, of the her motion to intervene in a summary process action brought by Beacon Residential Management LP (Beacon), the agent of the apartment owner, Georgetowne Homes Two, L.L.C. (Georgetowne Homes) (collectively, landlord).  We recite relevant allegations from the mother's motion to intervene and proposed answer, as supplemented by the testimony at the hearing before the motion judge.[5]

---

[3] The prospective intervener.

[4] We acknowledge the amicus briefs of the Women's Bar Association, and Casa Myrna and Jane Doe, Inc.

[5] In this case the landlord premised its notice to quit on the ground that there was an "unauthorized individual" -- the mother -- living in the apartment who had been involved in a "disturbance" on the property.  In the proposed answer appended

In October, 2009, the mother, together with her husband, R.P., and their son, moved into a federally regulated and subsidized apartment in the Hyde Park section of Boston; the apartment was owned by Georgetowne Homes.[6]  Initially both the mother and R.P. signed the lease.  Soon thereafter the landlord informed them that the Federal government would not subsidize the rent due to the mother's immigration status; thereafter, the couple removed the mother from the lease.[7]  At that time, February, 2010, R.P. remained in the apartment and signed a new

___

to the mother's motion to intervene, she claimed that she would raise affirmative defenses to both of the grounds listed in the notice to quit.  Accordingly, a trial on the merits of the summary process action or on the merits of the defenses raised in the mother's proposed answer would involve the same factual circumstances as the question whether the mother claims an interest in the subject of the proceeding.  In these circumstances, for the reasons we discuss infra, the motion to intervene is to be determined on the allegations in the motion, attached pleadings, and supporting testimony and documents.  See American Nat'l Bank & Trust Co. v. Bailey, 750 F.2d 577, 585 (7th Cir. 1984), cert. denied sub nom. Chicago Inv. Corp. v. American Nat'l Bank & Trust Co. of Chicago, 471 U.S. 1100 (1985) (discussing analogous Federal rule).

[6] The project-based housing was available through the United States Department of Housing and Urban Development Housing Choice Voucher Program, pursuant to 42 U.S.C. § 1437f (2012) and implementing regulations.  See Figgs v. Boston Hous. Auth., 469 Mass. 354, 355 & n.2 (2014).  In eligible housing, commonly referred to as "Section 8" housing, the Federal government, through the local public housing agency, "pays rental subsidies so eligible families can afford decent, safe and sanitary housing."  Id. at 355 n.2, quoting 24 C.F.R. § 982.1(a)(1) (1999).

[7] At the time, as a noncitizen, the mother needed documentation that she was legally in the United States.

lease for subsidized rent for himself and the son, and the mother and son moved to R.P.'s parents' home. The two returned to the apartment in June, 2010, but neither the mother nor R.P. took steps to amend the lease to include the mother as a household member.

In June, 2012, the mother was approved as a permanent resident. She returned to the landlord's office with her immigration paperwork, including her green card, and asked the landlord to add her name to the lease. The landlord's policy was to give an "add-on" application to anyone who requested one, and the landlord's agent testified that had the mother completed an add-on application, she would have been added to the lease as a matter of course, as long as R.P. agreed. However, although the mother asked to be added to the lease, she was not given an add-on application. The mother testified that the landlord's agent told her that only R.P. could add her name to the lease. She further testified that R.P. refused to do so as a way of controlling her.

On May 1, 2015, the mother obtained an abuse prevention order pursuant to G. L. c. 209A (209A order) against R.P..[8] The

---

[8] She had previously obtained an abuse prevention order pursuant to G. L. c. 209A (209A order) against R.P. in 2012. In 2013, R.P. tried -- unsuccessfully -- to obtain an order against the mother. Although the Housing Court judge permitted the parties to introduce the relevant orders in evidence at the

order required him to stay away from the apartment and from the mother's workplace; it also ordered him not to contact the mother or their two children[9] and granted full custody of the children to the mother. The order was subsequently extended for a full year.

On May 26, 2015, the landlord served a notice to quit on R.P. and the two children. The notice stated that the mother was an "unauthorized individual" living in the apartment, and that she was "involved in a disturbance on the property."[10] In July, 2015, the landlord filed a summary process action in the Boston Division of the Housing Court Department based on the notice to quit. The mother filed a motion to intervene and a proposed answer,[11] arguing that the housing provisions of the

---

intervention hearing, he did not permit them to introduce evidence related to the underlying facts for any of these actions, ruling that such evidence was "not relevant to [the] proceedings" on the motion to intervene.

[9] The mother gave birth to a second child after the family moved into the apartment but before the summons and complaint for summary process were filed.

[10] The mother claims that the disturbance was related to the 209A order and thus was an impermissible ground for eviction under the Violence Against Women Act (VAWA). The factual and legal bases for this claim would be properly litigated in a trial on the merits.

[11] In the Housing Court, the mother had also moved for permissive intervention pursuant to Mass. R. Civ. P. 24 (b), 365 Mass. 769 (1974). Because we conclude that she is entitled to intervene as of right, we need not consider the judge's denial of permissive intervention, which is subject to considerable

Violence Against Women Act, 42 U.S.C. § 14043e-11 (2012 & Supp. II) (VAWA), and G. L. c. 239, § 2A, prohibited the eviction because it was predicated on domestic violence. See 42 U.S.C. § 14043e-11 (housing protections for victims of domestic violence).

The landlord opposed the mother's motion to intervene, and the judge permitted both parties to introduce documents and testimony in an evidentiary hearing, at which the mother and the landlord's leasing agent testified. The judge issued oral findings in which he did not credit most of the mother's testimony and found that she and R.P. made a joint decision not to add her to the lease, to enjoy the benefit of lower rent. In addition, he found that the landlord's failure to give the mother an add-on application was due to negligence and not related to domestic violence, so the mother had not been discriminated against as an applicant under VAWA. As a result, the judge determined that the mother did not have an interest that allowed her to intervene as of right, but he allowed the mother to amend the motion to seek intervention on behalf of her children. He later denied the motion as amended, stating that the mother could not represent the children because she had

_____

discretion. See Cruz Mgt. Co. v. Thomas, 417 Mass. 782, 785 (1994) ("A judge has broad discretion in deciding whether to permit intervention").

acted fraudulently by living in the apartment without being named as a tenant on the lease. Finally, because R.P. did not appear, the judge entered a judgment of default.[12] The mother timely appealed to the Appeals Court the denial of her motion to intervene and the judgment of default. In an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court affirmed the denial. We allowed the mother's application for further appellate review and vacate both the denial of the motion to intervene and the judgment of default.

2. Discussion. a. Legal standard. We begin with the language of the relevant rule governing intervention as of right. "Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties" (emphasis added). Mass. R. Civ. P. 24 (a) (2), 365 Mass. 769 (1974). Whether the prospective intervener has met "the requirements for intervention is a question of law," and

---

[12] For reasons that are not apparent, the judgment of default was entered not only against R.P., but also against the children (who had been dismissed from the case) and the mother (who had not been permitted to intervene).

therefore we review the ruling de novo.  See Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 217 (2011).  In interpreting this rule, we look for guidance to decisions of Federal courts concerning Fed. R. Civ. P. 24 (a), as the Massachusetts rule on intervention is nearly identical to this analogous rule.  See Fremont Inv. & Loan, supra at 218.

Rule 24 (a) (2) "does not articulate explicit criteria for determining the sufficiency of the asserted interest." Bridgeman v. District Attorney for the Suffolk Dist., 471 Mass. 465, 484 (2015), quoting Bolden v. O'Connor Café of Worcester, Inc., 50 Mass. App. Ct. 56, 62 (2000).  Cf. Commonwealth v. One Hundred Twenty-Five Thousand One Hundred Ninety-One Dollars, 76 Mass. App. Ct. 279, 281-282 (2010) (in civil drug forfeiture cases, inquiry is similar to injury prong of standing analysis). Thus, the type and degree of interest that suffice for intervention depend on "the nature of the action in which intervention is claimed."  Care & Protection of Zelda, 26 Mass. App. Ct. 869, 871 (1989).  In the context of this proceeding, the question is whether the prospective intervener claims an interest relating to the unit subject to eviction proceedings notwithstanding the fact that she is not listed on the lease as a tenant.

What a prospective intervener must show to intervene is central to this case.  We note, first, that "Rule 24 (a) (2)

requires only that the applicant <u>claim</u> an interest relating to the property in suit," even if the claim may ultimately fail on the merits. See <u>American Nat'l Bank & Trust Co</u>. v. <u>Bailey</u>, 750 F.2d 577, 585 (7th Cir. 1984), cert. denied sub nom. <u>Chicago Inv. Corp</u>. v. <u>American Nat'l Bank & Trust Co. of Chicago</u>, 471 U.S. 1100 (1985). Because the question of intervention is a threshold inquiry, see <u>United States</u> v. <u>AT&T</u>, 642 F.2d 1285, 1291 (D.C. Cir. 1980), resolution of the merits of the prospective intervener's proposed pleading (an answer, in this case) or of the existing case would be inappropriate, so the motion to intervene "cannot be resolved by reference to the ultimate merits of the claim the intervener seeks to assert unless the allegations are frivolous on their face." <u>Turn Key Gaming, Inc</u>. v. <u>Oglala Sioux Tribe</u>, 164 F.3d 1080, 1081 (8th Cir. 1999), citing <u>Oneida Indian Nation</u> v. <u>New York</u>, 732 F.2d 261, 265 (2d Cir. 1984). See <u>Securities & Exch. Comm'n</u> v. <u>Dresser Indus</u>., 628 F.2d 1368, 1390 (D.C. Cir.), cert. denied, 449 U.S. 993 (1980). Instead, in these cases, "[t]he situation is somewhat akin to that presented on a motion for summary judgment or on a motion to dismiss," <u>Stadin</u> v. <u>Union Elec. Co</u>., 309 F.2d 912, 917 (8th Cir. 1962), cert. denied, 373 U.S. 915 (1963), and the judge should "take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations

supporting the motion as true absent sham, frivolity or other objections."  Southwest Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001) ("the propriety of intervention must be determined before discovery").  See Reich v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995).  Cf. Service Employees Int'l Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 329 (2014), S.C., 476 Mass. 51 (2016), and cases cited (on motion to dismiss for lack of standing, court "take[s] as true all facts alleged in the . . . complaint").  See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). Although a motion judge may hear arguments on the motion, or hold an evidentiary hearing to resolve ambiguities where the motion to intervene is not clearly understood, see Southwest Ctr. for Biological Diversity, supra, it is legally inappropriate at such an early stage to make findings regarding a prospective intervener's claimed interest, at least where, as here, such a determination would go to the merits of the proposed pleading or of the underlying case.[13]

---

[13] Citing Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 509, 510 (1997), and Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996), the landlord argues that upon the review of a denial of a motion to intervene, the motion judge's findings must stand absent clear error.  Indeed, this court stated as much as dictum in Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 217 (2011).  However, we note that the case cited in Fremont to support the proposition that we allow factual findings to stand absent clear error relied on a case that had

Thus, the prospective intervener should not be required to demonstrate the merits of his or her claim at an evidentiary hearing. Instead, the claim of intervention should be evaluated based on the allegations of the claim itself, and related documents; its merits are to be decided with all other claims. To hold otherwise would require a judge to rule on the merits of a prospective intervener's claimed interest -- including where that interest concerns the merits of a case that would go to a jury -- rather than determining only whether the prospective intervener has <u>claimed</u> an interest. See <u>American Nat'l Bank & Trust Co. of Chicago</u>, 750 F.2d at 585.

b. <u>Application</u>. The mother argues that both she and her children have an interest in the subject of the eviction proceedings that is not adequately represented by the existing parties.[14] The judge ruled that the mother did not have a sufficient interest in the proceedings because she is neither a

_____

nothing to do with intervention or any analogous pretrial situation. More importantly, adopting such a rule would overlook the procedural context of a motion to intervene. Indeed, the sources cited by the landlord concern appellate review following a full trial on the merits, whereas a motion to intervene is generally filed prior to discovery.

[14] As the judge noted, R.P. was no longer permitted to live with the family due to the abuse prevention order, so he had very little incentive to act in the mother's or children's interest. See <u>Frostar Corp</u>. v. <u>Malloy</u>, 77 Mass. App. Ct. 705, 712 (2010), quoting <u>United States Postal Serv</u>. v. <u>Brennan</u>, 579 F.2d 188, 191 (2d Cir. 1978) ("burden of showing that representation may be inadequate . . . 'should be treated as minimal'").

tenant nor an "otherwise qualified applicant" within the meaning of VAWA, and that, as described below, she could not represent the children's interest because she committed fraud. We disagree and conclude that she is entitled to intervene on behalf of herself pursuant to VAWA and on behalf of her children pursuant to both VAWA and G. L. c. 239, § 2A.

i. <u>Mother's interest in the proceedings</u>. Among other protections, VAWA provides that tenants and otherwise qualified applicants of public housing programs may not be denied or be evicted from housing on the basis that the tenant or applicant is a victim of domestic violence. See 42 U.S.C. § 14043e-11(b)(1). The mother asserts that she is an otherwise qualified applicant because she sought to be added to the lease and was a victim of domestic abuse by R.P.. The motion judge concluded, however, that the mother was not "otherwise qualified" under VAWA, finding that she committed fraud by living in the apartment without being added to the lease to avoid an increase in rent. This was error.

As discussed above, because the issue to be determined in deciding a motion to intervene is simply whether the prospective intervener has alleged plausible facts that claim an interest, not whether she would ultimately prevail in the underlying action, we take the mother's allegations in her motion, testimony, and supporting documents as true, and draw reasonable

inferences in her favor.  In other words, we consider only whether the mother has claimed an interest here as an otherwise qualified applicant.  As the landlord's contrary allegations -- that she was an unauthorized occupant and committed fraud -- go to the merits of the eviction case, they should not have been considered at the motion to intervene hearing.

VAWA does not expressly define what it means to be otherwise qualified, including whether this definition refers only to factors such as income and family size.  However, this motion arose in a preliminary stage of the case.  Because the mother claims that she tried to apply and that R.P. was abusive and prevented her from being added to the lease as a way of controlling her, she has alleged sufficient facts to permit an inference that she was an otherwise qualified applicant, and is entitled to intervene in the eviction proceeding.  American Nat'l Bank & Trust Co. of Chicago, 750 F.2d at 585 (opposing party's defenses to intervener's counterclaim did not defeat motion to intervene).  Any further determination of the credibility of her factual allegations as to whether she is otherwise qualified would be properly adjudicated at a later stage.  Id.

ii. <u>Children's interest in the proceedings</u>.[15] The mother also seeks to intervene in the eviction action on behalf of her children. We note that as to any interest claimed by the children, it is appropriate for the mother to intervene, as she is the parent with sole custody and they are minors.[16] We conclude that the mother has sufficiently alleged that the

---

[15] The unqualified judgment of default against R.P. means that if the lower court decision stands, the children will be forced to move. Normally, where minor children are living in an apartment with one parent, the question whether they have an interest sufficient to intervene is irrelevant because the parent is presumably an adequate representative of their interests. Here, however, R.P. was barred from contact with the children as a result of the 209A order, and he failed to appear in court. That does not automatically mean that the children have no recourse to prevent eviction. Cf. <u>Arsenault</u> v. <u>Chicopee Hous. Auth</u>., 15 Mass. App. Ct. 939, 941 (1983) (where custodial parent abandoned child and apartment, child who was lawful occupant could assert right to grievance procedures before eviction, even if success on merits was not guaranteed).

[16] As the 209A order against R.P. awarded sole custody of the children to the mother, it is appropriate for her to be the one to intervene on their behalf. Cf. Mass. R. Civ. P. 17 (b), as appearing in 454 Mass. 1402, 1402-1403 (2009); <u>Arsenault</u>, 15 Mass. App. Ct. at 939-940 (natural father brought action on child's behalf as next friend). In this case we find that any potential deficiencies in the mother's claims asserted in support of her motion to intervene as a party in her own right do not prevent her from meeting her threshold burden to intervene in her representative capacity on behalf of the two children. Moreover, as discussed <u>supra</u>, these are issues that should be properly resolved on the merits in the summary process proceeding itself.

children have interests entitling them to intervene, pursuant to both Federal and State law.[17]

VAWA provides that tenants may not be denied occupancy rights "solely on the basis of criminal activity directly relating to domestic violence . . . that is engaged in by a member of the household of the tenant or any guest . . . if the tenant or an affiliated individual of the tenant is the victim or threatened victim of such domestic violence."  42 U.S.C. § 14043e-11(b)(3)(A).  Here, the landlord seeks to evict the family, including the children, alleging that the parents committed fraud.[18]  The children qualify as tenants for purposes

---

[17] Because the mother has alleged that the lease violations claimed by the landlord were the result of domestic abuse by R.P., she has also alleged sufficient facts for the children to have an interest under other provisions of VAWA, including 42 U.S.C. § 14043e-11(b)(2) (2012 & Supp. II), which provides:

> "An incident of actual or threatened domestic violence . . . shall not be construed as --
>
> "(A) a serious or repeated violation of a lease for housing assisted under a covered housing program by the victim or threatened victim of such incident; or
>
> "(B) good cause for terminating the assistance, tenancy, or occupancy rights to housing assisted under a covered housing program of the victim or threatened victim of such incident."

[18] Fraud may fall under the category of "criminal activity" for purposes of VAWA.  See United States Department of Housing & Urban Development, The HUD Handbook 4350.3: Occupancy Requirements of Subsidized Multifamily Housing Programs, at 8-26

of VAWA because they are lawful occupants and members of the "assisted family," see 81 Fed. Reg. 80,724, 80,730 (Nov. 16, 2016), and their mother is an "affiliated individual" of them. See 42 U.S.C. § 14043e-11(a)(1)(A) (including "parent" and "child" in definition of "affiliated individual"). Here, accepting as true the mother's claim that she was prevented from adding her name to the lease as a part of R.P.'s abuse, it follows that we also accept as true the proposition that the criminal activity, i.e., fraud, alleged by the landlord was a result of domestic violence. As a result, the landlord's attempt to evict the children violates 42 U.S.C. § 14043e-11(b)(3)(A). Therefore, under VAWA, the children are tenants with an interest in the unit and the right to defend against wrongful eviction; thus, they have an interest sufficient to intervene in the action.

The children also have a viable defense to eviction based on Massachusetts law. Under G. L. c. 239, § 2A, there is a rebuttable presumption that an eviction action commenced within six months of a household member seeking a 209A protective order is retaliatory. Here, the 209A order was entered on May 1, 2015, and the notice to quit was dated May 26, 2015. Thus, there are sufficient facts to permit a presumption of

---

to 8-27 (Nov. 2013) (concerning Section 8 housing, "Fraud can be handled as a civil and/or criminal violation").

retaliation.  Accordingly, the mother may intervene on behalf of the children on this basis as well.

3.  Conclusion.  It perhaps goes without saying that success on a motion to intervene in an action does not guarantee success on the merits of that action.  In this case, it means simply that the mother is permitted to assert affirmative defenses to the eviction action on behalf of herself and her children.  Because we conclude that the motion judge prematurely reached the merits of the case, we vacate the judgment of default, reverse the denial of the motion to intervene, and remand for further proceedings consistent with this opinion.

So ordered.